UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JHONNY ALEXANDER MILLAN-PLAZA,

Petitioner,

v.

MARKWAYNE MULLIN, *et al.*,

Respondents.

Case No. C26-2715-MLP

ORDER

Petitioner is currently detained by United States Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas action, asserting his redetention without notice or an opportunity to be heard violated his due process rights under the Fifth Amendment. (Dkt. # 1, ¶¶ 1, 34-45.) Respondents filed a return (dkt. # 7), together with declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Ian Bloom (dkt. # 8) ("Bloom Decl.") and their counsel Michelle Lambert (dkt. # 9) ("Lambert Decl."). Petitioner filed a traverse in reply. (Dkt. # 10.)

Having reviewed the parties' submissions and the governing law, the Court GRANTS the petition (dkt. # 1) for the reasons set forth below.[1]

## I. BACKGROUND

Petitioner is a citizen of Venezuela who applied for admission into the United States at the San Ysidro Port of Entry on March 3, 2023. (Bloom Decl., ¶ 4.) Petitioner lacked the necessary documents to legally enter, so Customs and Border Protection ("CBP") served Petitioner with a Notice to Appear ("NTA") charging him with inadmissibility under the Immigration and Nationality Act ("INA"). (*Id.* ¶¶ 4-5.; *see* Lambert Decl., ¶ 2, Ex. B.) The NTA directed Petitioner to attend an immigration hearing on October 31, 2023. (Lambert Decl., ¶ 2, Ex. B.) Officer Bloom states Petitioner was thereafter released into the United States after being issued a "I-94 Parole Admission Form." (Bloom Decl., ¶ 6.) Respondents do not identify any statutory or regulatory authority related to Petitioner's release into the United States, but Petitioner asserts he was "paroled under the authority of 8 U.S.C. § 1182(d)(5)[.]" (Dkt. # 1, ¶ 2.)

While living in the United States, Petitioner filed an application for asylum. (Dkt. # 1, ¶ 3.) He asserts he continued attending immigration court hearings and was scheduled for an asylum merits hearing in Portland, Oregon prior to his arrest. (*Id.* ¶¶ 4, 6.) United States Citizenship and Immigration Services ("USCIS") approved his application for employment authorization on October 3, 2024, which was valid until October 1, 2029. (*See* Lambert Decl., ¶ 2, Ex. D.)

On July 6, 2026, ICE arrested Petitioner in Lebanon, Oregon after officers "encountered" him during a traffic stop. (Bloom Decl., ¶ 9.) Officer Bloom asserts that officers arrested Petitioner for failing to report to ERO after his parole expired. (*Id.*) However, the Form I-213

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 5.)

administrative record provides that Petitioner "was found to be a Venezuelan citizen in removal proceedings who failed to comply with the conditions of his release from custody upon [Order of Release on Recognizance] service" and that he "failed to report to ICE as required." (Lambert Decl., ¶ 2, Ex. E at 3.) Officer Bloom states that any reference to an Order of Release on Recognizance ("OREC") in Petitioner's Form I-213 "appears to be a terminology error" and that "[t]here is no record indicating that an OREC was issued." (Bloom Decl., ¶ 10.) Respondents also acknowledge "available administrative records do not contain any documentation about the conditions of release, including any requirement to report to ICE." (Dkt. # 7 at 4.) Nevertheless, ICE served Petitioner with a warrant for his arrest, along with a Notice of Custody Determination and took him into custody. (Bloom Decl., ¶ 11; *see* Lambert Decl., ¶ 2, Exs. F, G.) He was transferred to the NWIPC, where he has remained detained since. (Bloom Decl., ¶ 11.)

Petitioner was scheduled to attend an immigration merits hearing during this case's pendency, the outcome of which is unknown. (Bloom Decl., ¶ 12.)

On July 31, 2026, Petitioner filed the instant petition. (Dkt. # 1.)

## II. LEGAL STANDARD

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner's sole claim challenges his July 6, 2026, redetention as violative of his due process rights when assessed under the framework articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). (Dkt. # 1, ¶¶ 34-45.) He seeks release from custody. (*Id.* at 13.) Respondents contend Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(2) and did not require notice or a hearing prior to his redetention because "ICE followed applicable procedures for the termination of [his] parole." (Dkt. # 7 at 1-2.) This compliance, assert Respondents, satisfied due process. (*Id.* at 2.)

### A. *Mathews* and Due Process

Due process protections extend to all persons within the United States, including noncitizens. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews*, 424 U.S. at 332. Courts apply *Mathews* by weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025).

#### *1. Private Interest*

Freedom from physical confinement is a substantial liberty interest. *See Zadvydas*, 533 U.S. at 690; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). A person previously paroled is deprived of that interest upon renewed detention. *See Dieng v. Hermosillo*, 2026 WL 411857, at *3-5 (W.D. Wash. Feb. 13, 2026); *Torres v. Hermosillo*, 2026 WL 145715, at * 3-5 (W.D. Wash. Jan. 20, 2026); *Ramirez Tesara*, 800 F. Supp. 3d at 1136.

Respondents argue that Petitioner "ha[d] the same liberty interest as a person who had been stopped at the border" when he was redetained because he had been previously paroled under § 1182(d)(5)—the only mechanism for release under the otherwise mandatory detention scheme in § 1225(b). (Dkt. # 7 at 6.) According to Respondents, the government could thus "treat Petitioner as seeking admission despite a long period of living in the United States[.]" (*Id.* (citing *Pantoja Sanchez v. Hernandez*, 2026 WL 1506130, at *3 (W.D. Wash. May 29, 2026)).)

*Pantoja Sanchez* is distinguishable. In that case, the habeas petitioner was challenging his detention, and specifically the immigration court's denial of his request for a bond hearing, under 8 U.S.C. § 1225(b). 2026 WL 1506130, at *1. In other words, his claim was that he was being unlawfully detained under § 1225(b) and argued he was subject to the discretionary detention scheme under § 1226(a). *Id.*

Here, Petitioner's claim is focused on the circumstances of his arrest and redetention as unconstitutional under the Fifth Amendment. He does not, like the petitioner in *Pantoja Sanchez*, challenge the statutory classification of his current detention. In other words, it is irrelevant that § 1225(b) may ultimately govern his detention. According to Petitioner, it was the *process*, and specifically the lack thereof, that unconstitutionally deprived him of his liberty interest. (*See* dkt. # 1, ¶¶ 8, 23-33.)

Thus, contrary to Respondents argument, *Pantoja Sanchez* does not stand for the proposition that parolees under § 1182(d)(5) have the same liberty interest as someone "stopped at the border." (Dkt. # 7 at 6.) The court was merely recognizing that the "[p]etitioner's status as a parolee undermine[d] his claim that he is eligible for discretionary detention and a bond hearing under § 1226." *Pantoja Sanchez*, 2026 WL 1506130, at *3. Accordingly, the Court does not find Petitioner's liberty interest was reduced solely based on being paroled in 2023. Indeed,

district courts in this Circuit recognize that a "petitioner's liberty interest [does] not expire along with his parole." *Quiroga-Chaparro v. Warden of the Golden State Annex. Det. Facility*, 2025 WL 3771473, at *5 (E.D. Cal. Dec. 31, 2025); *see also G. G. v. Kaiser*, 2025 WL 3254999, at *6 (E.D. Cal. Nov. 22, 2025); *Ramirez Tesara*, 800 F. Supp. 3d at 1136-37.

This factor favors Petitioner.

*2. Risk of Erroneous Deprivation and Value in Additional Safeguards*

Admitted errors and regulatory noncompliance demonstrate there was a high risk of an erroneous deprivation and that additional, pre-deprivation safeguards would have been valuable in reducing the likelihood such deprivation occurred.

Respondents do not deny that Petitioner received no pre-deprivation process. (*See generally* dkt. # 7.) And despite ICE arresting petitioner for "fail[ing] to comply with the conditions of his release from custody upon OREC service," Respondents concede there is no evidence that Petitioner was released on an OREC or required to abide by any conditions of release. (Dkt. # 7 at 4.) Respondents' concession begs the question: What, if anything, did ICE agents review prior to taking Petitioner into custody and why did it contain erroneous information? Respondents do not answer that question but instead argue the risk of error remained low because appropriate parole termination procedures under 8 C.F.R. § 212.5 were followed. (Dkt. # 7 at 6-8.) According to Respondents, Petitioner was not entitled to written notice under § 212.5(e)(1) because his parole automatically terminated on its expiration date, which allowed DHS to treat Petitioner as if he was again at "the threshold of initial entry." (*Id.* at 7-8.) Although not expressly stated, it appears Respondents take the position that noncitizens currently living in the United States on expired parole can be redetained at any point after expiration without first receiving notice or an opportunity to be heard.

Respondents' argument stretches the "entry fiction" past its breaking point. Respondents rely on *Dep't. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) to emphasize "th[e] important rule that a noncitizen seeking initial entry into the United States has no entitlement to any legal rights, constitutional or otherwise, other than those expressly provided by statute." (Dkt. # 7 at 7 (citing *Thuraissigiam*, 591 U.S. at 107, 138-39) (citation modified).)

To be sure, the Court in *Thuraissigiam* acknowledged that noncitizens "who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Id*. (quoting *Shaughnessy v. United State ex rel. Mezei*, 345 U.S. 206, 215 (1953)). However, as the Honorable Lauren King recently emphasized in *Dieng*, the Court has held this to mean that a noncitizen in such circumstances is limited to "only those rights *regarding admission* that Congress has provided by statute." *Dieng*, 2026 WL 411857, at *3 (quoting *Thuraissigiam*, 591 U.S. at 140) (emphasis in *Dieng*). The court went on to acknowledge an important distinction for a noncitizen, like Petitioner here, who is challenging their detention: "But the Supreme Court has never applied the entry fiction doctrine to a case like this—to constitutionally justify the *detention* of a person living freely, for years, within the United States— and its expansion here cannot be justified." *Dieng*, 2026 WL 411857, at *4 (quoting *Rincon v. Hyde*, No. CV 25-12633-BEM, 2025 WL 3122784, at *2 (D. Mass. Nov. 7, 2025)) (emphasis in *Dieng*).

Here, Petitioner similarly seeks to challenge the circumstances of his redetention. He does not seek to expand his rights regarding his admission into this country but rather underscores the *process* he was owed, after having been released to live in the United States with seeming unconditional freedom. (*See generally* dkt. # 1.) The Court adopts the reasoning from *Dieng* and does not find *Thuraissigiam* or the fact that Petitioner was paroled from an otherwise

mandatory detention to support Respondents' position that due process required nothing more than what is "expressly provided by statute." (Dkt. # 7 at 7 (citation omitted).)

However, even if the Court were to focus on the statutory process provided, it appears Respondents failed to comply with their own regulations. When Petitioner's parole expired automatically, DHS was required to execute any removal order "within a reasonable time." *See* 8 C.F.R. § 212.5(e)(2)(i). If that could not be executed, they were required to release him on parole again unless an authorized DHS official opined the public interest required that Petitioner remain in custody. *See id.* According to Respondents, Petitioner's parole expired on March 1, 2024, *see* Bloom Decl., ¶ 7, yet there is no evidence Respondents sought to proceed with charges from Petitioner's March 3, 2023, NTA or otherwise seek his removal. In fact, it appears ICE agents were not even aware that an NTA was previously issued during his redetention, as the July 6, 2026 warrant indicates probable cause was based on "the execution of a charging document to initiate removal proceedings against [Petitioner]" and not on "the pendency of ongoing removal proceedings[.]" (*See* Lambert Decl., ¶ 2, Ex. F at 2.) If ICE executed a new charging document upon his July 6, 2026, redetention, that charging document is not before the Court. Further, there is no evidence that an authorized DHS official has opined that the public interest requires Petitioner to continue in custody. *See* 8 C.F.R. § 212.5(e)(2)(i). Thus, contrary to Respondents' position, it appears federal regulations were not followed. (*See* dkt. # 7 at 7.) "The risk of erroneous deprivation is significant where the government fails to follow its own procedures, thus depriving the noncitizen of process due prior to being detained." *Dieng*, 2026 WL 411857, at *8 n.10 (collecting cases). This factor weighs in Petitioner's favor.

*3. Governmental Interest*

Respondents identify two interests, but neither appear connected to Petitioner, advanced by his redetention, or so exigent that forgoing pre-deprivation process was warranted. Respondents contend the government has interests in preventing noncitizens from remaining in the Unites States in violation of the law and protecting immigration proceedings from unnecessary delay. (Dkt. # 7 at 8.)

As for the first interest, Respondents do not identify the law Petitioner violated other than being present in the United States—a fact the government certainly knew at the time ICE paroled him into the United States. To the extent Respondents contend Petitioner violated the law by failing to report to ICE after his parole purportedly expired, Respondents have already admitted that is unsupported by the evidence. (Dkt. # 7 at 4.) As for Respondents' second interest—preventing unnecessary delay in immigration proceedings—that interest is undermined by DHS's historical treatment of Petitioner. Taking Respondents' timeline as true, Petitioner's parole expired in early 2024, but there is no evidence DHS acted on that expiration or otherwise sought to advance Petitioner's removal proceedings until he was "encountered" well over two years later. Respondents do not explain this delay, suggest there were ongoing efforts to locate Petitioner shortly after his parole expired, or identify any other exigent or emergent circumstances that might arguably have justified forgoing pre-deprivation process.

This last factor weighs in Petitioner's favor.

In sum, all three *Mathews* factors weigh in Petitioner's favor. Given Petitioner's liberty interest at stake, the high risk of erroneous deprivation, and the identified governmental interests, providing no pre-deprivation process was constitutionally deficient. Habeas relief is therefore warranted. Consistent with cases in this district, the Court ORDERS that Petitioner be

RELEASED from custody. *See Kumar v. Noem*, 2026 WL 668335, at *5 (W.D. Wash. Mar. 10, 2026); *Nava v. Mullin*, C26-02324-TLF, 2026 WL 2294576, at *6 (W.D. Wash. Aug. 10, 2026).

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED.

a. Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention under conditions consistent with applicable statutory and regulatory authority; and

b. Within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioner's release.

(2) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are reminded of the meet-and-confer requirement under this Court's chambers procedures.

Dated this 31st day of August, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge